Good morning, Your Honors. May it please the Court. Your Honors, Mr. Lopez, the petitioner in this case, did not have a normal childhood. At the age of 16, he was threatened with death and torture over the mere sum of $50 per week. Despite this, the agencies below rushed through his proceedings, thereby committing not only substantive legal errors, but also violating Mr. Lopez's due process rights. In this regard, there are three issues on appeal. First, the IJA violated Mr. Lopez's due process rights when he failed to assess the evidentiary weight of the Spanish language documents and also abused his discretion in denying a continuance. Mr. Hahn, why don't you address on that you are claiming due process violations, but you have to preserve those. And I think a good argument can be made that it wasn't exhausted previously in front of the BIA. And I think you're claiming that you did, Mr. Marroquin said he did not agree with the immigration judge's decision and asked to be released on bond. So how is that sufficient to raise his due process arguments that he now wants us to address? Although those statements, Your Honor, in his notice to appeal to the Board, as well as other statements made, should be construed liberally, as this Court affords to pro se petitioners like Mr. Lopez. But at the same time, the Board of Immigration Appeals also did a de novo review, as stated on page 2 of the record. And this Court has held in the case of Agamemn that a de novo review by the Board is enough to – is enough of an opportunity for the Board to correct any of those procedural errors. Well, except for the proposition that you're raising this for. If a general statement of disagreement to an underlying decision is sufficient to preserve all arguments, including those not made in the underlying proceeding, wouldn't we just eviscerate the exhaustion rule? I mean, just saying, I disagree, so then, therefore, I can bring up anything? Actually, Your Honor, it's not just solely the statement, but it's the Board's de novo review on its own that satisfies the exhaustion requirement, because it created an opportunity for the Board to correct its procedural errors, which is the heart of the exhaustion requirement. But your client bears the burden of proof, doesn't he? Yes, Your Honor. And as my colleague just pointed out, just saying that the Board got it wrong does not put at issue specifically the exhaustion issue. Otherwise, as she pointed out, what's the point of having it? It's really simple to solve that. We require that you specifically state in your appeal and below the point that you disagree with. Like my colleague, I don't find anything in the record that suggests that your client has exhausted this issue. Can you point to anything in the administrative record that would specify the due process issue that you raise? Yes, Your Honor. But first, to respectfully disagree, it's not the statements that is the only avenue by which Mr. Lopez can exhaust his due process claims. Well, let's go to the record first, okay? Yes, Your Honor. Where in the record specifically can you point where your client raised the due process issue that you are arguing on appeal? Your Honor, I believe it's on page 51 of the record, which is the notice to appeal. And one of the statements made in that notice was that Mr. Lopez requested a redetermination of his case and also another opportunity to represent himself in front of the immigration court. This court should construe that statement liberally, as it has done so before for pro se petitioners like Mr. Luis Lopez, as exhausting the due process requirement. I think that's a very good point, Your Honor, because one of the procedural errors in this case, Your Honor, is the denial of a continuance expressly by the immigration judge. And by construing the request for redetermination of the case as well as requesting another opportunity to represent himself and his case in front of the board should be construed as disagreeing with the judge's denial of his continuance. But part of the reason of making people bring something up, it then gives the parties an opportunity to say something about it there, and we have a more developed record. You know, if you say, Judge, I object to something, and I specifically object to not letting these documents in or something along those lines, then the judge can better articulate the reasons. But just by letting something go, it's like if you don't object to something's hearsay, well, then it comes in and it's part of the evidence. But I think let's move on just so that I know that I think you pointed out what's your best argument on that. If we assume that it was exhausted, what reason is there to think that the Spanish-language documents would have changed the immigration judge's analysis? I believe Your Honor's question goes to the prejudice prong of the due process argument. And in that regard, this Court in Zalatukin has stated that absolute certainty is not required for the prejudice prong. Remember? Except for the immigration judge said basically to Mr. Modikin, you know, let's assume everything that you say is true, even though it's not translated. I still don't think you've said that there still isn't enough to show what you're saying. So how can we know that it would have changed, because the judge assumed everything to be true, even though it wasn't translated? There's two answers to that question, Your Honor. First, to continue, the Zalatukin Court stated that it may infer prejudice, absent any allegations as to what the Petitioner or his witnesses might have said if the I.J. had not limited the testimony. Suppose this case were remanded all the way back to the I.J. What would happen? So the immigration judge has a duty under this Court's precedent indent to scrupulously and conscientiously probe it. There would presumably be a translation of the documents. It would first, Your Honor, to assess the evidentiary weight of the Spanish language documents. At least one document in particular was on official letterhead for Mr. López. Those documents exist. Yes, Your Honor. And why haven't they been more, you know, look how much effort has gone into arguing about this. Why haven't they just been translated so we could make a determination right now whether it's to what degree your client was prejudiced and just skip over everything else? Well, Mr. López did make some mention of the Spanish language documents. So what do they say? Do you know what they say? Well, at least the news articles, Your Honor. He specifically mentioned to the immigration judge. What about that letter? The letter himself we don't know. You still don't know that? I mean, how hard would it be to tell the Court exactly what it said? I mean, I can read it and I know what it says. But let's – but I'm assuming you probably know what it says. And so what if it just said he went to work on Wednesday? I mean, how would that have been – so you're asking us at this point to say that a document that still no one said exactly what it says would have made a difference? It may have made a difference, Your Honor, because the – What does it say? Are you telling me you don't know what it says at this point? I do know what it says. What does it say? The letter has – attests to how Mr. López had – was attacked on the bus, I believe, and couldn't continue his duties assisting his father. And the letter was – The judge said he – that's what your client testified to, and the immigration judge said, I believe you. Yes, Your Honor. But that's not – the point, however, is that the immigration judge has a duty to probe into the record. And simply dismissing the documents as he did wasn't an execution of that duty. You say the immigration judge has an obligation to probe into the record. Your client bears the burden, does he not? Yes, Your Honor. To bring forth the evidence that's necessary to show in this case, first of all, that there's governmental involvement with this persecution. And I want to ask you about that next. And secondly, that your client is part of a protected class. The immigration judge has no obligation to bring that evidence forward, does he? No, Your Honor. However – What are you talking about when you say it's the burden of the judge to probe into these documents? The burden of the judge, Your Honor, is to probe into the record, to at least elicit the facts that constitute the basis for the petitioner's claim. Well, see, that's backwards, isn't it, counsel? I thought you just agreed that it's your client's burden to bring these to the judge, not the judge's obligation to ferret these elements, if you will, out of the documents. Isn't that correct? Yes, Your Honor. But considering that Mr. Lopez was pro se, and furthermore that he only went through a short, two-month-long proceeding, which is one of the factors that this Court in Cruz and Don was the basis for finding a due process violation in that case, what the immigration judge should have at least done is provide a continuance so that – Putting that – to me, you've got that backwards. But let's assume for a minute that that's not a problem. What evidence is there in the record that the government was involved with, acquiesced in, what your client claims was torture or persecution? First to note, Your Honor, this Court, for the Convention Against Torture Claim, the immigration judge also has an obligation to consider the country report, and that immigration judge's failure – Well, sure, but that's for future persecution. I'm asking about specifically what allegedly happened with respect to past persecution. What evidence is there in the record that the government either perpetrated or acquiesced in what happened to your client? I believe Your Honor's question goes to the – or Mr. Lopez's asylum and withholding claims. And in that regard, how – Per claim. They're all kind of mixed up with the – what allegedly happened. And I'm saying whatever – whichever one of these you're pursuing, what's the evidence in the record that the government acquiesced in or was directly involved in the persecution that allegedly occurred? Your Honor, Mr. Lopez and his family first made a police report, as stated on page 115 of the record. Furthermore, Mr. Lopez credibly testified that when people in his community, when victims in his community make reports to the police, nothing gets done, even when they pay the police. So, for example, if something happens in San Francisco, somebody gets held up on a bus, for example. Yes, Your Honor. You call the police and say it's a petty crime. Somebody steals a comb or something like that, and the police don't respond because they have so many things to do. Would that qualify as a cat claim in another country because there's persecution and the government has acquiesced in that theft? Perhaps not that specific case, Your Honor. However, Mr. Lopez wasn't – Mr. Lopez was threatened and also – and his family was also extorted with threats of dismemberment and death and not merely over a matter of – Extortion is a crime. Yes, Your Honor. So if – it appears that the immigration judge believed that it was – he was a victim of a crime and that the fact that the crime wasn't – you know, if you live in a place where there's a lot of crimes, that it doesn't mean that because the government can't solve it. If we were to – well, you can put that forth, but the court didn't buy it. So in order for you to win here, it would have to compel that result, right? So why aren't both of those reasonable and therefore you lose? To continue, Your Honor, the record also shows that despite filing these police reports, for years afterwards the police also did nothing to stop the threats and the extortions against Mr. Lopez's family. The record on page 120 shows that his siblings had to drop out of school for six months. So the rest of the family is back there, right? Yes, Your Honor. Okay. Do you want to save the balance of your time for rebuttal? Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Yamila Thabila on behalf of the Respondent, the Attorney General. The single sentence in Petitioner's notice of appeal was simply insufficient to put the agency on notice of the myriad of issues he asserts before this Court for the first time on appeal. And because of that, this Court is without jurisdiction to consider those challenges. Well, he's a poor pro se, and we're supposed to consider it liberally. So in your view, what would he have had to say to exhaust this due process claim? Your Honor, although pro se filings are construed liberally, this Court has stated that it's insufficient for a pro se litigant to simply disagree with the immigration judge's decision without identifying the basis for those challenges. All of the cases that Petitioner cites are distinguishable from his case. That is that in those cases, the pro se litigants at least asserted the factual problems in the record that formed the basis for their due process challenges. Have you translated all this whole argument that we spent all this time on turns on Spanish language newspaper articles in a letter? We already know what's in the letter. That's irrelevant. Have you translated the newspaper articles? Yes, Your Honor. The documents which Petitioner still has not translated would not have assisted his claim. The newspaper articles deal with general crime in the country of origin. And here, the immigration judge found the Petitioner credible. He didn't require additional corroboration. More evidence of crime was not going to help the Petitioner because crime is not a protected basis for asylum or related relief. Additionally, the letter which Petitioner still hasn't translated simply is a letter from a former employer stating that Petitioner was a victim of delinquency in Guatemala. That would have just, again, corroborated the general claim that he was a victim of crime. And the immigration judge and the agency accepted that. They accepted the truth of his testimony, simply finding that he had not proven a nexus with a protected ground. When I first looked at the issue of the protected class in this case, I didn't see anything at all, and I'm not sure that I still do, but two cases came down on the 7th from the Board of Immigration Appeals. One is the matter of WGR, and the second is the matter of MEVG. Are you familiar with those? Those are very recent, Your Honor. I believe those are protected. Those are on the basis of a protected social group, correct? Yes. Correct. So my question is, in the eyes of the government, do either of these cases have any bearing on this case? No, Your Honor, because Petitioner never asserted that he was a member of a particular social group before the agency. That issue was not exhausted before the agency. And the exhaustion requirement, the test is whether the issue has been sufficiently raised so that the agency can correct any errors or resolve any controversy. A family can be a social group, can't it? Yes, Your Honor. It's possible that a family is a social group. Isn't it obvious from the record that that was the basis of his claim? No, Your Honor. Petitioner only testified that he was robbed in front of his father, and his father was the victim of extortion where the criminal threatened his son. Your Honor, that is the case. Threatened the Petitioner. Threatened to cut him up. Yes, Your Honor. Send his pieces back to his father. That is extortion, Your Honor. And Petitioner in his own asylum application identifies these individuals as extortionists. He never claims that he's he was targeted because he's a member of a family. He says repeatedly that they are targeting him because they want money. He identifies the persecutors as people asking for money, people who go around doing bad things, extortionists in his own asylum application. And his mother in her letter, which was translated, says that these people threatened my son. They never, nowhere in the record do they say that he is being targeted because he's a member of a family. In fact, his entire family, as Your Honor pointed out, remains in the country of origin, including all of his siblings, all without harm. I was a little confused. It seemed you responded, I think, to asylum withholding and CAT. They seemed to just in their briefs challenge the CAT. But I was a little surprised that he even had the asylum because it said he came in 2004 and then he claimed asylum in 2011. I mean, did the immigration judge just give him the benefit of that without finding some sort of procedural bar? Yes, Your Honor. Although the immigration judge identified the one-year bar, he simply did not apply it in this case and allowed Petitioner's asylum application to be decided on the merits. So in terms of what the appellant is challenging, is it just the CAT? I mean, you address the asylum withholding and CAT, but in their captions on their brief, they seem to just say the CAT. I don't know. I'm confused. Your Honor, because the immigration judge did not apply the one-year bar and the board didn't apply the one-year bar, our position is that the reviewing the immigration judge and the court's decision in tandem, all of these issues are available on appeal. However, the specific due process challenges Petitioner is making, we're simply not exhausted. If we assume, arguendo only, that the exhaustion issues don't bar us from considering the merits, and if I look at these most recent cases, they don't say a whole lot that's new, but they say that in order to establish membership in a particular social group, the Petitioner must show, number one, that it's composed of members who share a common immutable characteristic defined with peculiarity and socially distinct within the society in question. It seems like what they're saying here is they're rich. Is that immutable? It's unclear whether Petitioner, again, because Petitioner didn't exhaust these claims before the agency, it's unclear whether he's I have an easy answer to that. You could be rich and you could be poor the next day if the stock market crashes. Yes, Your Honor. Absolutely. It's not an immutable characteristic, and again, he So basically, we're just saying if you get beyond the exhaustion issue, and I'm saying they do, but if they do, the fact that you're rich is not an immutable characteristic. If you are of a particular racial group or of your particular disability or something like that, it may indeed be immutable, but being rich is not an immutable characteristic, is it? Yes, Your Honor. And if Petitioner's claim is that his particular social group is identified by wealth, that would not qualify as a particular social group. What if the group was a political party? That would fall into a characteristic that this Court has identified as being one that the Petitioner should not be required to change. Well, that's not immutable. People change political affiliation. Yes. Ronald Reagan was once a Democrat. Yes, Your Honor. But this Court also includes characteristics that an individual, although they could change, they should not be required to change. Well, that's a separate described category, is it not, in terms of the five categories of unique? Yes, Your Honor. Yes. Particular question or the political question. Yes, Your Honor. Particular, I'm sorry, the social group, I'm sorry. Yes, it is a separate ground. Political opinion, whether it's actual or imputed, would be a separate basis. It's not the particular social group. Government's acquiescence. What does the word acquiescence mean? When it talks about, for example, acquiescence in conduct that could be defined as torture. Consent or willful blindness. And here, Your Honor, Petitioner only asserts that they made a visit to the police regarding the threatening phone calls. They couldn't identify the people. They disconnected their telephone. The threats were never carried out. That the police didn't resolve this. The State Department's country report for 2010, an excerpt of which is on page 7, I think, of the Petitioner's brief, is fairly devastating. It suggests that a virtual anarchy reigns in Guatemala, that the police are corrupt, that the government isn't capable of controlling them. It talks about police involvement in serious crimes, unlawful killings, drug trafficking and extortion, impunity for political activity, arbitrary arrest, detention, failure of the judicial system to ensure full and timely investigations and fair trials. I mean, it goes on. It's absolutely scary. Yes, Your Honor. Does that constitute acquiescence when essentially the whole law enforcement system has collapsed? Petitioner hasn't established that there was acquiescence in his case, Your Honor. All he's saying is based on the general conditions in the country that perhaps there is acquiescence. But those facts are not supported by the record in this case. All he did was tell the police about threatening phone calls, that they did not resolve this phone call. Tell them about a robbery, too. Yes, Your Honor. That his father was paying extortion over a period of time until he ran out of money. And then his father. All of this may or may not be true, but the ILJ, the immigration law judge said he believed it. And so you have all of these, you have these criminal acts directed against him and his father, and you have the police don't do anything about that, but it's just, it's not like a robbery in San Francisco. Here the whole law enforcement system, according to the State Department country report, is just, is nonfunctioning. Crime is not a protected basis for relief, Your Honor. The agency agreed that Petitioner had testified credibly about the criminal violence that he had suffered, the threats that he had suffered, but that is not a protected basis for relief. Are you aware of any case or cases where a country report has been a factor in determining whether there has been past persecution? I know it's done very frequently with respect to the likelihood of future persecution, but are you aware of any that in any way constituted an element of such as acquiescence in past persecution? No, Your Honor. I'm only aware of the country reports being used to prove up a well-founded fear of future persecution, the prospect, the prospects of persecution. So if that is correct, the concern raised by my colleague and friend from New York would, it still would not address the past persecution issue, right? No, Your Honor, it would not. So the fact, if you believe that they were, that he feared that if he went back they would chop him up and send the pieces of his body to his father, that was, you would still deport him? Your Honor, Petitioner's claim is based on a claim of a fear of crime, and general criminal violence in the country is just simply not a protected basis. And here, his family, all of his siblings, his parents, continue to reside in Guatemala unharmed. Well, they're not quite unharmed, at least as I understand the record. They were subject to, they weren't killed, his siblings, but they were subject to criminal activity. They have never been physically harmed, and they were subject to threats just as Petitioner. That's what the record shows, Your Honor. If there are no further questions, you're not required to use all your time unless you want to. In conclusion, the Court should dismiss the petition for review. Thank you. Thank you. We have 2 minutes and 11 seconds, which to 11 is the criminal code for robbery in California. Thank you, Your Honor. Your Honor, I would, Petitioner would like to address a few points on rebuttal. First, a translation was not proffered to this Court because under 8 U.S.C. 1252b-4, this Court is limited to just the record, the administrative record. We shouldn't look at the country report. That's part of the administrative record, Your Honor. Oh, I see. Okay. Yes, Your Honor. But a translation would be. The most recent one. The most, like, as in the one from 2013. More recent one than the one that's in the record. That would be an inappropriate addition to the record because the statute limits this Court's review of the facts to just the record. Furthermore, Your Honor, acquiescence, this Court found, this Court found. What's your best case to say that the country report can be thrown into showing the past persecution? It's not needed here, actually, Your Honor. In terms of whether the level of harm. Well, that doesn't answer my question. What's your best case for that? Petitioner's not making. Is there a case that says you can use the country report to establish the petitioner's burden of past persecution? To Petitioner's knowledge, no, but that's not Petitioner's argument, Your Honor. On the question of whether the harm, the threats rise to a level of persecution, the IJA already found on page 70 of the record that there's credible and persuasive evidence that Mr. Lopez will be harmed in the future as well as being harmed in the past. So whether the threats constitute a certain level of harm is not, wasn't the basis for the IJA's denial, but instead it was a failure on the basis of nexus as well as the inability and the unwillingness to control by the government. And on those grounds, Your Honor, the basis here is not a criminal ground or a monetary motive, but instead is a family that constitutes Mr. Lopez's particular social group. And it was because the attackers wanted to leverage the familial relationship. But counsel, if you listen to what we discussed with your opposing counsel, one of the characteristics of the social group is an immutable characteristic. What is immutable about the particular social group described by your client? I see that my time is up. May I respond to Your Honor's question? Answer it. Your Honor, the, this Court has already found and agreed with the Board's decision in the matter of a cause that the families can already constitute particular social groups, as stated in the case of Lynn v. Ashcroft. You're not answering my question. But the immutable. What is immutable about being rich? It's not the richness, Your Honor, but it's just the family relationship in general. That family relationship, that blood tie is the immutable characteristic. If somebody is a member of the Consuelo Callahan family, does that mean that's a particular social group? So this Court has limited the definition of family for a particular social group to not extend to such attenuated relatives. A member of a particular social group by being a member of your immediate family. Yes, Your Honor. Doesn't that eviscerate all of our case law about what a particular social group is? I don't believe so, Your Honor. This Court, in the case of Lynn v. Ashcroft, cited too many cases that show that a family can constitute a particular social group. The question is whether that particular social group was being leveraged in order to commit persecution against a petitioner. All right. Thank you. Your time's expired. Thank you both for your argument. This matter will stand submitted. Once again, thank you for handling this case pro bono. And, you know, I hope that you both found your experience in the Ninth Circuit, particularly when you're a law student, as something that you'll come back. Good job, both of you. Thank you.
judges: Korman, Callahan, Smith